UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Chadwick Wayne Johnson,     )     Civil Action No.:  4:16-cv-01039-RBH
     )
     Plaintiff,     )
     )
v.     )     **ORDER**
     )
Joe Kinard, Deputy of the Darlington)
County Sheriff's Department,     )
     )
     Defendant.     )
_____)

Plaintiff Chadwick Wayne Johnson, proceeding pro se and *in forma pauperis*,[1] brings this excessive force action pursuant to 42 U.S.C. § 1983 against Defendant Joe Kinard.  The matter is before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Kaymani D. West, who recommends granting in part and denying in part Defendant's motion for summary judgment.[2]  *See* R & R [ECF No. 80].

## Legal Standards

### I.    Review of the R & R

The Magistrate Judge makes only a recommendation to the Court.  The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept,

---

[1]    Plaintiff was a pretrial detainee confined at the Darlington County Detention Center when he filed this action, but he is now a state prisoner housed at the Kirkland Correctional Institution in Columbia, South Carolina. *See* ECF Nos. 1 & 91.  Plaintiff is serving an eighteen-year sentence for first-degree burglary, but this conviction does not appear to be related to the criminal charges at issue in this case.  *See* SCDC Incarcerated Inmate Search, *available at* http://public.doc.state.sc.us/scdc-public/ (last visited Mar. 7, 2018) (searched by SCDC ID 00338411).

[2]    The Magistrate Judge issued the R & R in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.).

reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II.     Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III.    Excessive Force

The Fourth Amendment prohibition against unreasonable seizures bars the use of excessive force on free citizens, whether it be "in the course of an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court must apply an "objective reasonableness" standard in determining whether an officer has used excessive force when seizing a free citizen. *E.W. by & through T.W. v. Dolgos*, __ F.3d __, __, 2018 WL 818303, at *4 (4th Cir. Feb. 12, 2018). "The

question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). This objective inquiry is based on the totality of the circumstances, and it requires an examination of the officer's actions in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation—subjective motives, intent, and/or propensities are irrelevant. *Dolgos*, 2018 WL 818303, at *4. A non-exhaustive list of factors to consider include: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396). "Evaluating the reasonableness of the officer's actions 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham*, 490 U.S. at 396).

### **Discussion**[3]

Plaintiff brings this § 1983 action for excessive force against Defendant Joe Kinard, a deputy employed by the Darlington County Sheriff's Office ("DCSO"). Both parties agree Plaintiff was detained and tased multiple times at a convenience store in Hartsville, South Carolina, around midnight on December 12, 2014. However, as the Magistrate Judge explains, the parties materially disagree as to what led to Plaintiff being tased and how many times he was tased.

Plaintiff alleges that his wife drove him to the store, that he bought cigarettes and reentered the passenger side of the car, that several vehicles "rapidly approached," and that approximately three to

---

[3]      The R & R thoroughly summarizes the factual and procedural background of this case, as well as the applicable legal standards. The Court adopts that summary without fully repeating it here.

five people exited them and ordered Plaintiff to exit his car with his hands up. Plaintiff claims he was inexplicably tased three times by three different officers despite immediately exiting the car with his hands raised and back facing them. These allegations appear in Plaintiff's verified amended complaint. *See* ECF No. 26.

Meanwhile, Defendant contends that he and another officer, Freddie Englebert, observed Plaintiff run back and forth between a trash can in front of the store and quickly enter a nearby parked car. Defendant activated the blue lights of his patrol car, exited it, and asked Plaintiff to exit his vehicle. Plaintiff was "clenching something in his right fist," did not respond when Defendant asked him what he was holding, and put his right hand in his pocket when asked to show his hands. Defendant claims he was concerned Plaintiff could have a weapon, so he grabbed Plaintiff's right hand, but Plaintiff began fighting and put a plastic bag containing a white substance in his mouth. Defendant asserts he and Plaintiff went to the ground struggling, and Englebert tased Plaintiff when he "became more combative"; the first tase did not make Plaintiff comply, so Defendant instructed Englebert to tase Plaintiff a second time, which caused Plaintiff to spit out a baggie containing crack cocaine. Plaintiff was then arrested for possession of crack cocaine and taken to jail.[4] These allegations appear in Defendant's affidavit, Englebert's affidavit, and the incident report they prepared. *See* ECF Nos. 70-2, 70-3, & 70-4.

Given the factual disputes, the Magistrate Judge recommends denying Defendant summary judgment to the extent that Plaintiff has sued him in his individual capacity, and denying Defendant

---

[4]     Plaintiff asserts that he "was served a warrant with the affidavit of defendants claiming resisting arrest, and the possession of drugs," and that the DCSO subsequently "dropped all charges" on March 12, 2015. ECF No. 77-2 at p. 9. Public records indicate three charges (for possession of cocaine base, possession of marijuana, and resisting arrest) were disposed of on March 12, 2015, but these records do not specify the reason for disposition. *See* Darlington County Public Index, *available at* http://publicindex.sccourts.org/Darlington/PublicIndex (search for case numbers 2014A1610101258, 2014A1610101258, and 2014A1610101260).

qualified immunity. *See* R & R at pp. 5–12. The Magistrate Judge further recommends granting Defendant summary judgment for the claims asserted against him in his official capacity.[5] *See id.* at pp. 8–9, 12. Defendant has filed objections to the R & R, and Plaintiff has filed a reply to Defendant's objections. *See* ECF Nos. 83 & 88. Plaintiff has also filed several additional documents and motions, which the Court addresses below. *See* ECF Nos. 85, 86, & 87.

## I.       Defendant's Objections

Defendant acknowledges in his objections that "[t]here is no dispute that force was used when Plaintiff was arrested outside a convenience store." ECF No. 83 at p. 1. However, Defendant attacks the sufficiency of the evidence that Plaintiff presents, arguing: (1) even disregarding the affidavits of Defendant and Englebert, the incident report was prepared contemporaneously with Plaintiff's arrest and before this lawsuit was filed; (2) Plaintiff merely restates and relies upon the conclusory allegations from his complaint and fails to produce the alleged dashcam video or body microphone evidence he references; (3) Plaintiff provides no corroborating testimony from his wife or any other witness; (4) Plaintiff presents no evidence that Defendant acted outside his official duties or with actual malice or intent to harm; and (5) Plaintiff does not reveal any injuries from this encounter or requests for medical treatment.[6] *See id.* at pp. 1–3.

Defendant's arguments essentially ask the Court to impermissibly weigh the evidence and make

---

[5]       Plaintiff has filed a document indicating he misunderstands the Magistrate Judge's recommendation regarding granting Defendant summary judgment on the claims asserted against him in his official capacity. *See* ECF No. 85 at pp. 4–5. The Court agrees with the Magistrate Judge that the Eleventh Amendment bars Plaintiff from suing Defendant for monetary damages in his official capacity. *See Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 278 (4th Cir. 2016) ("The Eleventh Amendment bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983.").

[6]       Defendant also argues Plaintiff "does not demonstrate he was denied necessary medical treatment." ECF No. 83 at p. 3. The Court notes this action does not involve a claim for deliberate indifference to Plaintiff's serious medical needs (an entirely different cause of action), and therefore Defendant's argument is irrelevant.

credibility determinations, and therefore the Court cannot accept them. *See Jacobs*, 780 F.3d at 569 (emphasizing a court "cannot weigh the evidence or make credibility determinations" when ruling on a motion for summary judgment). Plaintiff's amended complaint is verified and contains allegations based on his personal knowledge, and therefore it is sufficient by itself to preclude summary judgment. *See Carter v. Fleming*, 879 F.3d 132, 141 n.8 (4th Cir. 2018) ("'[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (alteration in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991))); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (holding that factual allegations contained in a verified complaint may establish a prima facie case under 42 U.S.C. § 1983 sufficient to defeat summary judgment).

Moreover, the Fourth Circuit recently reversed this Court's grant of summary judgment in a similar case involving a § 1983 excessive force claim and use of a taser. *See Richardson v. Mahon*, 697 F. App'x 249 (4th Cir. 2017). There, the police officer contended he tased the plaintiff after "attempting to speak to [the plaintiff]'s wife regarding a domestic violence complaint and [when the plaintiff] approached him aggressively, 'got chest to chest' with [the officer], and actively resisted arrest." *Id.* at 250. The plaintiff, however, "averred that his wife was leaving the premises when [the officer] arrived, that he did not behave aggressively or get 'chest to chest' with [the officer], and that he did not resist any commands, and nevertheless, [the officer] [t]ased him." *Id.* Based on these competing allegations and need for a credibility determination by a jury, the Fourth Circuit reversed this Court's grant of summary judgment to the officer.[7] *Id.*

---

[7] The Court notes *Richardson* was a unique case because the undersigned was personally familiar with the plaintiff, who the Court had sentenced in a criminal matter. The Court took judicial notice of its own records from the plaintiff's federal criminal case and relied on the plaintiff's prior criminal history to determine no rational jury

Here, Plaintiff alleges he was inexplicably tased three times despite complying with officers' commands and immediately exiting his car with his hands raised and back facing them. Meanwhile, Defendant contends Plaintiff was tased two times after their physical struggle during which Plaintiff put a plastic bag with drugs in his mouth. Like *Richardson*, the instant case "is essentially that of a classic swearing contest between two litigants," *id.* at 249, and therefore the Court cannot grant summary judgment.[8] *See Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 751 (4th Cir. 2016) ("Where the determination of what actually happened depends on an assessment of the credibility of the respective witnesses, this assessment is a disputed issue of fact that cannot be resolved on summary judgment.").

Although Defendant argues Plaintiff demonstrates no injuries from the tasing, Plaintiff alleges in his verified amended complaint that after being tased and "harsh[ly] hand[led]," he arrived at jail "semi-conscious" and was in "extreme pain" for several days afterwards. *See* ECF No. 26 at p. 9. Significantly, "the severity of the physical injury resulting from the force used is but one consideration in determining whether force was excessive. Police officers will not be absolved of liability merely because their conduct, however unreasonable, results in only *de minimis* injury." *E.W. by & through T.W. v. Dolgos*, No. 16-1608, 2018 WL 818303, at *8 (4th Cir. Feb. 12, 2018) (internal quotation marks

---

could find him credible. *See Richardson v. Mahon*, No. 4:15-CV-03317-RBH, 2017 WL 1094091, at *4 (D.S.C. Mar. 23, 2017), *aff'd in part, vacated in part, remanded*, 697 F. App'x 249 (4th Cir. 2017). The Fourth Circuit disagreed with the Court's analysis. If that case could not survive summary judgment, this case surely cannot.

[8]     Although Defendant does not specifically object to the Magistrate Judge's proposed finding that he is not entitled to qualified immunity, the Court agrees with the Magistrate Judge that qualified immunity is not warranted due to the disputed facts. *See* R & R at pp. 9–11. *See also Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (discussing qualified immunity in the context of taser uses); *see, e.g.*, *Newkirk v. Enzor*, 674 F. App'x 276, 282 (4th Cir. 2017) ("[T]he legal question of whether Enzor is entitled to qualified immunity as to Mrs. Newkirk's excessive force claim 'depends entirely on a credibility determination' between Mrs. Newkirk's and Enzor's diverging portrayals of the traffic stop, and as such, is 'inappropriate for resolution by summary judgment.'" (quoting *Rainey v. Conerly*, 973 F.2d 321, 323–24 (4th Cir. 1992))).

and citation omitted); *see also Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015). Moreover, the

Fourth Circuit has observed the pain that a taser can inflict:

> Deploying a taser is a serious use of force. The weapon is designed to "caus[e] . . . excruciating pain," *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010), and application can burn a subject's flesh, *see Orem v. Rephann*, 523 F.3d 442, 447–48 (4th Cir. 2008), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *cf. Commonwealth v. Caetano*, 26 N.E.3d 688, 692 (Mass. 2015) ("[W]e consider the stun gun a per se dangerous weapon at common law."). We have observed that a taser "inflicts a painful and frightening blow." *Orem*, 523 F.3d at 448 (quoting *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir.1993)). Other circuits have made similar observations. *See, e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 414 n.9 (10th Cir. 2014) ("A taser delivers electricity into a person's body, causing severe pain."); *Abbott v. Sangamon Cty.*, 705 F.3d 706, 726 (7th Cir. 2013) ("This court has acknowledged that one need not have personally endured a taser jolt to know the pain that must accompany it, and several of our sister circuits have likewise recognized the intense pain inflicted by a taser." (internal citations and quotation marks omitted)).

*Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016) (alteration

in original and internal footnote omitted). Thus, summary judgment is not warranted on the basis of

minimal harm, and Plaintiff's alleged injuries remain relevant to determining whether the force used

was excessive.

Regarding Defendant's objection that Plaintiff fails to produce the alleged dashcam video or

body microphone evidence from the incident, the Court notes there is no indication that Defendant has

produced any such video or audio evidence to corroborate Defendant's or Englebert's version of the

events that necessitated Plaintiff being tased. The affidavits and incident report prepared by Defendant

and Englebert indicate legitimate reasons for deploying tasers, but Plaintiff has denied those reasons

existed by way of his verified amended complaint, thus creating an issue of fact as to whether excessive

force was used. Again, the Court has not been provided dashcam, bodycam/microphone, or other such evidence, and is regrettably left with a swearing contest.[9]

Defendant shrewdly observes that "no case could ever merit summary judgment if [p]laintiffs only need to acquire the incident report and vary their version of events to create a factual dispute." ECF No. 83 at p. 4. Unfortunately, that indeed is the case in many excessive force and other § 1983 cases these days; plaintiffs can obtain the incident report and swear (i.e., verify) a contradicting complaint to create an issue of fact and thereby escape summary judgment. The Court has great respect for law enforcement, sincerely understands the difficulties that officers face every day, and does not take lightly Defendant's valid point.[10] Nevertheless, based on the competing factual allegations in this case, the Court is constrained to deny Defendant summary judgment to the extent he is sued in his individual capacity.

The Court overrules Defendant's objections.

## II.     Plaintiff's Filings/Motions

### A.     Request to Amend

Plaintiff has filed a "Reply to Report and Recommendation" as well as a "Motion to Reserve Oppertunity to Add Defendants." *See* ECF Nos. 85 & 86. Liberally construed, these documents appear to be a request to amend Plaintiff's complaint (either now or later). *See generally Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating "[a] document filed pro se is 'to be liberally construed'" (quoting *Estelle*

---

[9]     Likewise, as noted in Footnote 4 above, Plaintiff's charges were apparently dismissed, and thus there presumably is no criminal transcript containing a plea colloquy with a recitation of facts agreed to by Plaintiff. If there is some such state court record, Defendant should certainly bring that matter to the Court's attention.

[10]     Defendant notes Plaintiff's arrest "occurred in 2014 when law enforcement had just begun to secure funding for this technology [i.e., dashcam and bodycam/microphone]." ECF No. 83 at p. 2. The Court is a huge proponent of such technology, as one of its many benefits would be providing independent corroborating evidence in cases such as this.

*v. Gamble*, 429 U.S. 97, 106 (1976))). Defendant has filed a response in opposition to Plaintiff's "Motion to Reserve Oppertunity to Add Defendants." *See* ECF No. 89.

Plaintiff makes two primary requests. ***First***, he indicates he wishes to add defendants to this lawsuit, stating that "as a prisoner, [he] has no way to find out the identity of the other police officers who were involved in his assault." ECF No. 86-1 at p. 2. He references a "dash cam video" (which he apparently does not have) and "ask[s] the Court that the unnamed defendants remain as John Doe 1, 2 and 3 until their identity is revealed by the dash cam evidence or the aid of the Court to make the Sheriff's Office reveal them."[11] *Id.* at pp. 2–4. ***Second***, Plaintiff "request[s] to revise the damage compensation for excessive force violation, $30,000 each defendant compensatory damages, and $60,000 punitive damages."[12] ECF No. 85 at p. 3.

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading only with the written consent of the opposing party or leave by the Court, and it specifies the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Although leave to amend should be 'freely give[n] when justice so requires,' Fed. R. Civ. P. 15(a)(2), a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse 'to grant the leave without any justifying reason.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[11]     Again, there is no indication that a dashcam or bodycam/microphone recording of the incident exists.

[12]     In his verified amended complaint, Plaintiff seeks $25,000 in compensatory damages and $5,000 in punitive damages. *See* ECF No. 26 at pp. 12–13. Plaintiff's verified amended complaint is the operative pleading in this case. *See* ECF No. 25.

In this case, however, Plaintiff seeks to amend his complaint (which he already amended once) long after the scheduling deadline for doing so has passed.[13] "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard [of Federal Rule of Civil Procedure 16(b)(4)] must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *see Pure Fishing, Inc. v. Normark Corp.*, No. 3:10-cv-02140-CMC, 2012 WL 3062683, at *1 (D.S.C. July 26, 2012) ("[W]hen the deadline for amendment has passed, the moving party must first demonstrate good cause under Rule 16(b) before the [C]ourt will consider whether an amendment is proper under Rule 15(a)."). "Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment." *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015). Here, Plaintiff has not demonstrated the diligence required by Rule 16(b), and therefore has not shown good cause justifying modification of the deadline for filing a motion to amend. Moreover, amendment would be prejudicial to Defendant given that discovery closed in April 2017 and Plaintiff did not file the instant request to amend until September 2017. *Compare* ECF No. 67 (Amended Scheduling Order), *with* ECF Nos. 85 & 86 (request to amend). The Court denies Plaintiff's request for leave to amend the complaint.[14]

### B.     Motion to Appoint Counsel

---

[13]     On August 1, 2016, the Magistrate Judge issued a scheduling order specifying, "Motions to amend pleadings shall be filed no later than **September 1, 2016.** Amendments of pleadings beyond this date will not be permitted absent extraordinary circumstances." ECF No. 19.  On August 15, 2016, Plaintiff filed a motion to amend his original complaint, and the Magistrate Judge granted the motion and docketed Plaintiff's verified amended complaint as the operative complaint. *See* ECF Nos. 23, 25 & 26.  Plaintiff did not file his instant request to amend until September 11, 2017—over a year after the deadline for amendment. *See* ECF Nos. 85 & 86.

[14]     Additionally, the Court notes Plaintiff previously named three other defendants (in addition to Defendant Kinard): John Doe 1, John Doe 2, and C. Caldwell. *See* R & R at pp. 1–2.  On February 3, 2017, the Court granted Defendant Kinard's motion to quash service on these three defendants (because service was accepted by a DCSO employee by mistake) and entered an order dismissing them from the case. *See* ECF No. 63.  The Court noted Plaintiff did not file a response to the motion to quash or provide the Court with updated service documents. *Id.*

Plaintiff has also filed a motion seeking the appointment of counsel. *See* ECF No. 87. Defendant has filed a response in opposition to the motion. *See* ECF No. 90.

Generally, a pro se prisoner does not have a right to counsel in a § 1983 action. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). However, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e). The decision to appoint counsel is committed to the district court's discretion, "but it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." *Whisenant*, 739 F.2d at 163. In particular, the existence of exceptional circumstances turns on (1) the type and complexity of the case and (2) the capabilities of the individual bringing it. *Id.* Counsel should be requested "[i]f it is apparent . . . that a pro se litigant has a colorable claim but lacks the capacity to present it." *Id.*

The Court finds appointment of counsel is proper given the procedural posture of this case (i.e., surviving summary judgment), and therefore will grant Plaintiff's motion and appoint Derek Shoemake, Esquire as counsel for Plaintiff. The Court directs the parties' attention to the "Conclusion" section below.

### Conclusion

For the foregoing reasons, the Court adopts and incorporates by reference the Magistrate Judge's R & R [ECF No. 80]. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment [ECF No. 70], **DENIES** Plaintiff's motion to amend [ECF No. 86], and **GRANTS** Plaintiff's motion to appoint counsel [ECF No. 87]. This case shall proceed solely as to Plaintiff's § 1983 excessive force claim asserted against Defendant in his individual

13

capacity.

The Court hereby **APPOINTS** Derek Shoemake, Esquire, of the Simmons Law Firm, in Columbia, South Carolina, to represent Plaintiff and **DIRECTS** the Clerk to send a copy of this Order to both Mr. Shoemake and Plaintiff.[15]  Within thirty days, Mr. Shoemake shall contact Plaintiff, who is incarcerated at the Kirkland Correctional Institution in Columbia, South Carolina.  Mr. Shoemake shall have access to court filings on ECF and shall consult with opposing counsel (Lisa Thomas, Esquire) within a reasonable period of time regarding (1) the need for any limited discovery by Mr. Shoemake, (2) the mediation of the case, and (3) the submission of a short proposed consent scheduling order, which should include deadlines for limited discovery (if any) and mediation. The proposed consent scheduling order shall be submitted as soon as possible.  **Mr. Shoemake and Ms. Thomas shall promptly contact Magistrate Judge Thomas E. Rogers, III, regarding his availability to mediate this case.**

**IT IS SO ORDERED.**


Florence, South Carolina                                    s/ R. Bryan Harwell
March 8, 2018                                               R. Bryan Harwell
                                                           United States District Judge

---

[15]     Before entering this Order, the Court contacted Mr. Shoemake, who confirmed his willingness to serve as a courtesy to the Court.

14